UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK RADFORD, et al.,

    Plaintiffs,

v.

TELEKENEX, INC., et al.,

    Defendants.

CASE NO. C10-812RAJ

ORDER

## I.     INTRODUCTION

This motion comes before the court on Defendant's motion for partial summary judgment (Dkt. # 51). No party requested oral argument, and the court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS the motion (Dkt. # 51).

## II.     BACKGROUND

In January 2009, Plaintiffs Mark Radford and Mark Prudell accepted offers of employment as senior sales consultants for Defendant Telekenex, Inc. ("Telekenex"), a regulated telecommunications provider based out of San Francisco. *See* Chaney Decl. (Dkt. # 52) ¶¶ 2-3. In March 2009, Plaintiffs and Telekenex learned that AuBeta Networks ("AuBeta"), an unregulated Seattle telecommunications company, was going

ORDER- 1

out of business, and Telekenex became interested in acquiring AuBeta's assets. *See* Chaney Decl. ¶ 6. Telekenex's CEO Brandon Chaney and CFO Anthony Zabit reached an agreement with AuBeta's owner whereby Telekenex would acquire certain AuBeta assets (customer contracts) and assume certain liabilities. *See* Chaney Decl. ¶ 7. In order to preserve the unregulated statuts of AuBeta's assets and liabilities, Telekenex officers decided to create a different entity, Defendant Telekenex IXC, Inc. ("IXC"), that would purchase AuBeta's assets and liabilities.[1] *See* Chaney Decl. ¶ 10.

Telekenex also hired former AuBeta employees to help transition AuBeta customers to Telekenex. In transitioning AuBeta customers to Telekenex service, some AuBeta customers were (depending on the length of their remaining term of service with AuBeta) required to agree to a longer term of service with Telekenex, or else their service could not be maintained with Telekenex. *See* Chaney Decl. ¶ 10. Plaintiffs were assigned to work on, *inter alia*, those transition accounts. *See* Radford Decl. (Dkt. # 55) ¶ 8.

Plaintiffs were eventually terminated in April 2010, and brought this lawsuit thereafter against, *inter alia*, Telekenex and IXC, contending that they were owed commissions earned during the AuBeta transition. IXC filed this motion for partial summary judgment, requesting that it be dismissed as a Defendant because it was not the Plaintiffs' employer and not a party to Plaintiffs' employment contracts.

---

[1] IXC was incorporated in Delaware and its headquarters are located in Seattle. IXC hires and maintains its own employees, leases its own space, maintains its own books and payroll, and filed its own corporate tax returns. *See* Chaney Decl. ¶ 12.
 Plaintiffs have also submitted documents showing that Telekenex and IXC were restructured such that Telekenex's assets were recently sold to IXC Holdings, Inc. ("IXC Holdings"), which is an entity with some relationship to IXC. *See* McGuigan Decl. (Dkt. # 56), Ex. 2. Documents also show that Telekenex and IXC were both acquired by TelePacific Managed Services in May 2011. *See* McGuigan Decl., Ex. 6.

## III. ANALYSIS

**A. Legal Standards.**

Summary judgment is appropriate if the moving party establishes that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B. IXC Cannot Be Considered an "Employer" of Plaintiffs.**

Plaintiffs' claim that they are entitled to prevail in this lawsuit under three Washington statutes: RCW 49.46.130 (Washington's Minimum Wage Act ("MWA")), RCW 49.48.010 (Washington's Wage Collection Act ("WCA")), and RCW 49.52.070. All three of these statutory schemes authorize claims against an employer, and IXC suggests that because it was not Plaintiffs' employer, it should be dismissed as a Defendant. Plaintiffs, however, contend there is at least a question of fact as to whether IXC employed Plaintiffs.

"Employer" is not specifically defined for purposes of RCW 49.48.010 or RCW 59.42.070, but the MWA defines "employer" as "any individual, partnership, association, corporation, business trust, or any person or group of person acting directly or indirectly in the interest of an employer in relation to an employee." RCW 49.46.010(4). The MWA's definitions are patterned on the federal Fair Labor Standards Act of 1938

("FLSA"). *See Anfinson v. FedEx Ground Package Sys., Inc.*, 159 Wn. App. 35, 50 (2010). Washington courts, therefore, look to federal case law regarding the FLSA for guidance in interpreting the MWA. *See, e.g.*, *Anfinson*, 159 Wn. App. at 53-54.

To determine if a defendant is a joint employer for purposes of the FLSA,[2] courts consider four factors known as the "economic realities" test: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1233 (C.D. Cal. 2007) (quoting *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). None of these factors is dispositive; courts consider the "economic realities" factors in combination. *See Bonnette*, 704 F.2d at 1470.

Plaintiffs do not directly address the *Bonnette* factors, but state broadly that "Plaintiffs were economically dependent upon both IXC and Telekenex for their continued employment, meeting the economic reality test employed in Washington." Pltfs.' Opp'n at 11. Plaintiffs have not, however, argued specifically (or submitted any evidence to support such an argument) that IXC had the power to hire[3] or fire them, that IXC supervised[4] or controlled their work schedules or working conditions, that IXC

---

[2] Plaintiffs urge the court to look to cases addressing how to determine whether a person is an employee or an independent contractor. *See* Pltfs.' Opp'n (Dkt. # 54) at 9-13. The court, however, will focus on cases addressing the question before this court: whether IXC was a joint employer, along with Telekenex, of Plaintiffs or, in the alternative, whether IXC and Telekenex could be considered a "single employer."

[3] The letters offering employment to Plaintiffs are written on Telekenex letterhead and state that "All offers of employment with Telekenex are on an at will basis . . . ." Radford Decl. (Dkt. # 55), Ex. 1. Also, at the time Plaintiffs were hired, IXC did not exist. *See* Chaney Decl. ¶ 5.

[4] Mr. Radford also submitted evidence that he was given an award as Telekenex's salesman of the year in 2009. *See* Radford Decl., Ex. 5.

determined the rate and method of payment,[5] or that IXC maintained employment records for Plaintiffs. IXC contends that it did not do any of those things.[6] *See* Def.'s Mot. at 8; Chaney Decl. (Dkt. # 59) ¶¶ 6-8. Thus, a review of the *Bonnette* factors suggests that IXC did not employ Plaintiffs. Particularly because the commission schedule that Plaintiffs seek to enforce via this lawsuit is an agreement between the Plaintiffs and Telekenex only (see Radford Decl., Ex. 2 ("This compensation is private and confidential to Telekenex employees only."), it seems that the evidence submitted in this case does not support Plaintiffs' assertion that IXC and Telekenex jointly employed them.

Plaintiffs make an alternative argument: that IXC and Telekenex should be treated as a "single employer"[7] because IXC is a wholly owned subsidiary of Telekenex. IXC disputes that IXC has ever been a wholly owned subsidiary of Telekenex. *See* Chaney Decl. (Dkt. # 59) ¶ 4. A parent-subsidiary relationship is not necessary to finding a "single employer" relationship, however. To determine whether two affiliated companies should be treated as a "single employer," courts examine (1) the degree of interrelation of

---

[5] Plaintiffs submitted an e-mail indicating that a commission advance was paid to them out of IXC's budget, at the direction of Telekenex/IXC officers. *See* Radford Decl., Ex. 4. This evidence is at best neutral with regard to the third *Bonnette* factor. That Telekenex/IXC officers specifically directed that the advance should be paid with IXC funds suggests that this arrangement was out of the normal course, indicating that the Plaintiffs were normally paid by Telekenex. Furthermore, this e-mail does not establish that IXC determined the rate or method of payment, but only that at least one payment was made with IXC funds.

[6] This contention is supported to some degree by Mr. Radford's deposition testimony, wherein he testified that he was not an employee of IXC and that he did not have much knowledge of IXC's existence. *See* Boyle Decl. (Dkt. # 58), Ex. 1 at 66-67. Though IXC makes much of this testimony, Mr. Radford's colloquial understanding of the degree of interrelatedness between Telekenex and IXC is not dispositive nor particularly relevant to the issues before this court.

[7] The "single employer" test was developed in the context of employment discrimination cases, not FLSA claims. Neither party disputes that this analysis applies in this case, and therefore the court assumes without deciding that this analysis is applicable in the FLSA context.

operations (such as common offices and recordkeeping), (2) whether the companies had common management or directors, (3) whether the companies centralized control of personnel matters and labor relations, and (4) whether the companies were centrally owned and financed. *See Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 815 (9th Cir. 2002). The third factor is the "most critical" factor. *Kang*, 296 F.3d at 815.

Considering the first factor in the context of this case, it is not satisfied because Telekenex and IXC do not have interrelated operations. It is undisputed that IXC maintains separate headquarters, maintains its own books and payroll, and files its own corporate tax returns. *See* Chaney Decl. (Dkt. # 52) ¶ 12. The third factor is also not met, because it is undisputed that IXC hires and supervises its own employees. *See* Chaney Decl. (Dkt. # 52) ¶¶ 12-13. It is also undisputed that Plaintiffs' working conditions, schedules, pay structure, or contractual obligations did not change upon IXC's incorporation. Chaney Decl. (Dkt. # 52) ¶13.

IXC essentially concedes that IXC and Telekenex have the same owners, managers, and directors, but argues that this overlap of management is not, given the separate and distinct operations described in the previous paragraph, consistent with a finding of single employer. The court agrees, especially considering that the third factor is the most important factor, and Plaintiffs have produced no evidence to dispute IXC's assertions that Telekenex and IXC maintained separate control of their respective labor relations. Plaintiffs essentially simply reiterate that IXC is a wholly owned subsidiary of Telekenex, and presume that that relationship suffices to make IXC and Telekenex a "single employer." IXC disputes that it has ever been a wholly owned subsidiary of Telekenex (see Chaney Decl. (Dkt. # 60) ¶ 4), and even if the court had grounds to find that that relationship existed, there is no evidence showing that the two corporations were sufficiently integrated to be considered a single employer. *See Lisenbee v. Fedex Corp.*, 579 F. Supp. 2d 993, 1001-02 (M.D. Tenn. 2008) (finding that parent and subsidiary corporations were not sufficiently interrelated to be considered a "single employer").

### III. CONCLUSION

For the foregoing reasons, the court GRANTS the Defendant's motion (Dkt. # 51). Telekenex IXC, Inc., is terminated as a Defendant in this matter.

DATED this 15th day of August, 2011.

*(signature)*

The Honorable Richard A. Jones
United States District Judge